UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL STATKIEWICZ,<br><br>                              Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>                              Defendant. | Civil Action No. 21-4316 (JXN)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on the appeal by Plaintiff Michael Statkiewicz ("Plaintiff" or "Statkiewicz") of the final decision of the Commissioner of Social Security ("Commissioner") determining that Plaintiff was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), having considered the parties' submissions and with oral argument, affirms the Commissioner's decision.

**I.     BACKGROUND AND PROCEDURAL HISTORY[2]**

Plaintiff was 46 years old when he alleges he became disabled (Tr. 23); he was 49 at the hearing before the ALJ (Tr. 384). He completed high school and one semester of college before

---

[1] Kiolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The Court cites to the Transcript provided by the Commissioner, ECF No. 6-2.

1

joining the military (Tr. 23, 385). In the past, he worked as a security police officer, a skilled job (Tr. 27, 394). Plaintiff stopped working in July 2015 primarily due to his physical impairments (Tr. 385-86). Plaintiff testified that he does laundry, cooks a few times a week, and is independent with personal care (Tr. 389).

On June 15, 2017, the claimant filed a Title II application for a period of disability and disability insurance benefits. The claimant also filed a Title XVI application for supplemental security income on May 30, 2017. In both applications, the claimant alleged disability beginning April 22, 2016. These claims were denied initially on August 22, 2017, and upon reconsideration on December 4, 2017. Thereafter, the claimant filed a written request for hearing on February 4, 2018 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*)(Tr. at 33).

The claimant appeared and testified at a hearing held on May 31, 2019, before Administrative Law Judge Ricardy Damille (the "ALJ"). Plaintiff was represented by MaryJean Ellis, Esq. Premier Vocational Experts, LLC, an impartial vocational expert, also appeared at the hearing. *Id.* At the hearing, Plaintiff explained that he cannot do anything physical and no longer has stamina (Tr. 386). While he is sitting, he is in pain (Tr. 387). He feels tingling and numbness, elevates his leg, wears support stockings, and can only sleep in one position at night (Tr. 387). Plaintiff cannot walk his dogs anymore (Tr. 387). Although Plaintiff was advised to use a cane for stability, he does not do so because of embarrassment (Tr. 388-89). While he denied doing anything physical, he admitted doing laundry and cooking (Tr. 389).

On August 7, 2019, the ALJ determined that Statkiewicz had not been disabled within the meaning of the Social Security Act from April 22, 2016, through the date of the decision. *Id.* at 19. And so, he denied him benefits. *Id.* Statkiewicz appealed the ALJ's decision to the Appeals

Council, which denied his request for review on January 28, 2021. ECF No. 6-2 at 2. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On March 5, 2021, Statkiewicz commenced this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence and contains error of law. ECF No. 1. Statkiewicz requests that the Court find that he is entitled to Social Security benefits or remand the case for a further hearing. *Id.* The Commissioner filed an answer to the Complaint and a transcript of the proceedings that occurred before the Social Security Administration. ECF No. 6. The parties then filed briefs, *see* ECF Nos. 7,11, and 12. This matter is ripe for decision.

## II.   SUMMARY OF THE RELEVANT EVIDENCE

In April 2016, Plaintiff was diagnosed with left leg deep vein thrombosis ("DVT") with a pulmonary embolism (Tr. 1282-85, 2255). He was treated with rivaroxaban, an anticoagulant medication that generally controlled this condition (Tr. 1280).

On June 12, 2017, Plaintiff went to the emergency department with intermittent epigastric and left thigh pain (Tr. 2060-2100). On examination, there was mild epigastric tenderness but no edema in the lower extremities (Tr. 2060-2100). He received infusion treatment and was discharged (Tr. 2060-2100).

In addition to this statement of facts, the Commissioner incorporates by reference the facts discussed in the ALJ's decision (Tr. 12-19). According to June and July 2017 treatment notes, Plaintiff had an active diagnosis of DVT but he appeared well without distress and no edema; his pain did not significantly interfere with activities of daily living (Tr. 1011-14, 2107-08). On August 29, 2017, Plaintiff reported 4/10 pain (Tr. 2101). On October 2, 2017, records indicate that Plaintiff was not in acute distress (Tr. 1500).

On January 30, 2018, Plaintiff's DVT returned (Tr. 2306-07). He presented to the emergency department with worsening left lower extremity pain and was admitted to the hospital with recurrent DVT over the left leg, as well as over scar tissue in the femoral artery (Tr. 2255). During his three-day stay, an ultrasound showed an acute left external iliac DVT and an acute chronic left common femoral DVT (Tr. 2306-07). A CT scan of his chest showed no pulmonary embolism but revealed a 1 cm left lower lobe sub-pleural nodularity with mild mediastinal and right hilar lymphadenopathy (Tr. 2306-07). Also, it showed an incidental finding of an eight millimeter nodular gallbladder wall thickening near the fundus, which could reflect adenomyomatosis (Tr. 2306-07). Plaintiff's final diagnoses included acute chronic left lower extremity DVT; abnormal CT findings of right hilar lymphadenopathy and left pleural-based nodule of 1 cm; and incidental cerebellar tonsillar displacement (Tr. 2306). A hematologist recommended various medications, including resumption of rivaroxaban, and follow-up (Tr. 2306-07, 2255). He had no lifting restrictions at discharge (Tr. 2309).

In July 2018, Ashish A. Shah, D.O., recommended Tylenol and leg elevation to alleviate Plaintiff's left leg pain (Tr. 1732-36). A September 18, 2018, review of systems note indicates Plaintiff had pain in the left leg, but his edema had significantly improved (Tr. 2184). On September 24, 2018, Plaintiff reported significant pain at the left groin and popliteal fossa and disclosed that he had been unable to tolerate knee-high or thigh-high compression stockings (Tr. 2181). On October 4, 2018, Plaintiff appeared well, without distress and with no edema (Tr. 2267-68).

On October 28, 2018, Plaintiff visited a vascular surgeon to establish care for his chronic DVT (Tr. 2263). Plaintiff reported decreased swelling since his hospitalization, but complained of an "aching/stiff" pain in his left leg that increased with activity and in certain positions (Tr. 2263).

4

He could walk a couple of hundred yards and up a flight of stairs before having to stop due to stiffness/aching in his left lower extremity (Tr. 2266). Plaintiff was considered "disabled from his work as a security officer;" continued rivaroxaban, and compression stockings were recommended (Tr. 2266).

As of December 20, 2018, Plaintiff's labs were stable and within normal limits; he was doing well, denied any bleeding or falls, and had not missed any doses of rivaroxaban (Tr. 2258). Through January 2019, Plaintiff's DVT was stable, although a recurrent clot with intermittent swelling was noted (Tr. 2251-53). An anticoagulation consult was placed due to the recurrent clot (Tr. 2251-53).

On April 10, 2019, Joy H. Madison, M.D., completed a medical source statement form on Plaintiff's behalf (Tr. 2299-2302). She opined that Plaintiff could sit, stand, and walk for less than 2 hours in an 8-hour day; needed to shift positions at will; take unscheduled breaks during the day every few minutes; rest every half hour; and elevate legs above his heart for 70-80% of the time during an 8-hour day (Tr. 2299-2302). Dr. Madison further opined that he could rarely lift and carry less than 10 pounds; never twist; rarely stoop; never crouch; rarely climb stairs; never climb ladders; would be off task for 25% or more of the day; is incapable of even low stress work; and, would be absent more than four days per month (Tr. 2299-2302).

With respect to Plaintiff's mental impairments, on August 25, 2016, he met with a psychologist for individual therapy (Tr. 1091-93). Plaintiff exhibited a depressed and anxious affect and he reported periods of extreme anxiety (Tr. 1091-93). He had good hygiene, but avoided eye contact, walked with an impaired gait, with noticeable pain; his speech was normally modulated, relevant, and coherent; he appeared alert and oriented to all spheres; and he thought abstractly (Tr. 1091-93). There was no evidence of memory impairment, his thought patterns were

5

logical, and there was no evidence of psychosis (Tr. 1091-93). His diagnoses included posttraumatic stress disorder (PTSD) and depression (Tr. 1091-93). A July 2018 treatment note indicates an active diagnosis of PTSD (Tr. 1011). On January 10, 2019, the claimant reported that his PTSD was stable (Tr. 2253).

### III. STANDARD OF REVIEW

#### A. Substantial Evidence Review

This Court reviews the final decision of the Commissioner only to assess whether the decision rests on application of proper legal standards and is supported by "substantial evidence." 40 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). In applying the deferential substantial evidence standard of review, the court does not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *Rutherford*, 399 F.3d at 552. Even if the court would have decided the case differently, it defers to the Commissioner and affirms the findings and decision so long as substantial evidence supports it. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quotations omitted).

As the Supreme Court recently reiterated, the standard for substantial evidentiary sufficiency "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is only "more than a mere scintilla." *Id.* (internal quotation omitted). "It means – and *means only* – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted; emphasis supplied). The substantial evidence standard is even less demanding than the clearly erroneous standard applicable to appellate review of district court factfinding, *see Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (citing *Biestek*, 139 S.Ct. at 1154), a very deferential standard. The Supreme Court in *Biestek* also stated that an ALJ's fact-finding is not readily

6

subjected to categorical rules separate and apart from the deferential substantial evidence test. *Id.,* at 1156-57. Rather, "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)).

The question before this court, therefore, is whether substantial evidence supports the Commissioner's finding that Statkiewicz is not disabled and whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

### B. Burdens of Proof, Persuasion, and Determination by the ALJ

The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v), as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to

do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must ... show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ

8

must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, " 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' " *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

### C. The ALJ's Decision Denying Statkiewicz Benefits

In his August 7, 2019 decision, at step one the ALJ found that Plaintiff had not performed substantial gainful activity since his alleged onset date, thereby satisfying the first step (Tr.18). At steps two and three, the ALJ found that Plaintiff had the severe impairments of deep vein thrombosis (DVT), a history of bilateral pulmonary embolism; depressive disorder; anxiety disorder; and post-traumatic stress disorder (PTSD), but that these impairments did not meet or equal all the criteria of a listing (Tr. 20-22). At step four, the ALJ then found that Plaintiff retained the residual functional capacity (RFC) to perform a range of light work with the following limitations:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with exceptions. Concerning *exertional* limitations, the claimant is capable of lifting/carrying a maximum of 20 pounds at a time and frequently lifting/carrying up to 10 pounds. He can stand and or walk for 4 hours out of an 8-hour workday. Concerning *postural* limitations, the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, and kneel, but never crouch or crawl. Concerning *environmental* limitations, he must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. Concerning *mental* limitations, the claimant is able to understand, remember, and carry out simple instructions. He is restricted to work involving few if any workplace changes.

(Tr. 22). At step five, the last step of the sequential evaluation process, the ALJ reviewing whether the claimant can do any other work considering his residual functional capacity, age, education, and work experience, determined the following:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.
>
> At the May 31, 2019 hearing, the vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: (a) dispatcher (DOT #249.587-018), which is unskilled work (SVP 2) performed at a light exertional level, with about 53,000 jobs nationally; (b) assembler (DOT #237.367-046), which is unskilled work (SVP 2) performed at a light exertional level, with about 7,000 jobs nationally; and (c) storage facility rental clerk (DOT #205.367-014), which is unskilled work (SVP 2) performed at a light exertional level, with about 43,000 jobs nationally. This testimony is reasonable and consistent with the residual functional capacity fashioned in this decision.
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(Tr. 28) The ALJ therefore found that Plaintiff was not disabled. *Id.*

## IV.   DISCUSSION

Plaintiff raises two issues on appeal, namely, that the ALJ failed to resolve an apparent conflict between the vocational expert's testimony and the DOT pursuant to SSR 00-4p (Pl.'s Br.,

ECF No. 10 at 5), and the ALJ erred by improperly evaluating opinion evidence. Pl.'s Br., ECF No. 10 at 11.  The Court will address each of the issues in turn.

### A. WHETHER THE ALJ'S RFC CREATES A CONFLICT WITH THE JOBS OFFERED BY THE VOCATIONAL EXPERT THAT WAS LEFT UNRESOLVED, WHICH REQUIRES REMAND

The ALJ determined that Statkiewicz was limited in many ways including that he was only able to "understand, remember, and carry out simple instructions. He is restricted to work involving few if any work place (sic) changes." R 22. The ALJ provided hypothetical questions to the vocational expert based on this RFC, R 395-396. The ALJ determined that Statkiewicz was not disabled because, based on VE testimony, he could perform the following alternate jobs:

> (a) dispatcher (DOT #249.587-018), which is unskilled work (SVP 2) performed at a light exertional level, with about 53,000 jobs nationally; (b) assembler (DOT #237.367-046), which is unskilled work (SVP 2) performed at a light exertional level, with about 7,000 jobs nationally; and (c) storage facility rental clerk (DOT #205.367-014), which is unskilled work (SVP 2) performed at a light exertional level, with about 43,000 jobs nationally.

(Tr. 27). But the DOT numbers listed were for that of a document preparer, a telephone information clerk, and a charge account clerk, jobs that were offered by the VE under a different hypothetical. R 397-398. On cross-examination, the VE testified that a limitation to simple instructions would preclude the performance of jobs that require the ability to carry out detailed written and oral instructions (Tr. 399). This testimony created a conflict between the VE's testimony and the DOT for the jobs of dispatcher and assembler because both have a GED reasoning level of 2, which is defined in relevant part as the "ability to apply common sense and understanding, to carry out detailed but uninvolved written or oral instructions." DOT, Appendix C, 1991 WL 688702. The Commissioner concedes that the ALJ's findings with respect to the jobs of dispatcher and assembler are not supported by substantial evidence. However, the VE's testimony did not apply to the job of storage rental facility clerk, which has a GED reasoning level of 3. A GED reasoning

11

level of 3 does not automatically conflict with a restriction to "simple instructions." *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014).

The Court in *Zirnsak* applied a "case-specific analysis," to determine whether an inconsistency existed in the particular case before it by considering the following factors: whether plaintiff actually argued that he was incapable of performing the jobs recommended by the VE; whether inconsistencies between the VE's testimony and the DOT were identified at the hearing; and whether or not the occupations listed by the VE were intended to be exhaustive or were merely illustrative. *Upshur v. Colvin*, 200 F. Supp. 3d 503, 512 (E.D. Pa. 2016) (citing *Zirnsak*, 777 F.3d at 618-19).

Here, the record supports that Plaintiff can perform work as a storage rental facility clerk. Indeed, the ALJ asked the VE if his testimony was consistent with the DOT (Tr. 398). The jobs the VE identified were "examples," not the *only* jobs available (Tr. 396) (emphasis added). Plaintiff testified that his physical problems were his primary impediment to working (Tr. 385-86), and he provides no specific argument about why he is unable to perform work as a storage rental facility clerk (Pl.'s Br. at 6-9).

Plaintiff contends that the ALJ's limitation to "understanding, remembering, and carrying out simple instructions" conflicts with the General Educational Development (GED) reasoning levels of the jobs that the vocational expert identified (Pl.'s Br. at 5-9). No conflict exists, however, with respect to one of the three jobs the VE identified, and the evidence demonstrates Plaintiff can perform that job. Moreover, despite any conflict in the specific other work categories, the ALJ determined that claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Accordingly, if the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R.

12

§§404. 1520(a)(4)(v), 416.920(a)(4)(v). Here, the ALJ provided "a clear and satisfactory explication of the basis on which" his decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Even if the conflict were to constitute error, the Third Circuit has held: "An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). The ALJ identified "other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [ ] medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001). Any possible error at step five did not materially harmed Plaintiff. Accordingly, "a remand is not required here because it would not affect the outcome of the case." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3dCir. 2005).

### B. WHETHER THE ALJ ERRED IN EVALUATING THE OPINION EVIDENCE

Here, the ALJ found Dr. Madison's opinion lacked supporting evidence for the limitations he endorsed (Tr. 26). In terms of consistency with the overall record, the ALJ found the limitations Dr. Madison endorsed were extreme when compared to the record (Tr. 26).

The Court finds that substantial evidence supports the ALJ's RFC determination. Because Statkiewicz's claim concerns the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, and for claims, like Statkiewicz's, filed on or after March 27, 2017. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, which

13

granted special deference to opinions of treating physicians.

Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§404. 1520c(b), 416.920c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§404.1520c(c), 416.920c(c). The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§404.1520c(b)(2), 416.920c(b)(2). As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§404.1520c(c)(1), 416.920c(c)(1). And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of

a medical source's opinion. 20 C.F.R. §§404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may explain his or her consideration of the other factors. *Id.* If there are two equally persuasive medical opinions about the same issue that are not the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§404.1520c(b)(3), 416.920c(b)(3).

The Third Circuit has held that the ALJ need not base his or her RFC finding on a specific medical opinion; it is an administrative finding. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."); *Titterington v. Barnhart*, 174 F. App' x 6, 11 (3d Cir. 2006) (there is no current "legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC [residual functional capacity]"); *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003).

Here, the ALJ comported with the new regulatory framework and substantial evidence supports his RFC determination. As a threshold matter, the ALJ discussed at length the persuasiveness of the medical opinions in the record and discussed the consistency and supportability of each, as required by the regulations. ECF 6-2 at 24 - 26. The record reflects that the ALJ made the following observations:

> According to the April 2019 physical medical source statement by Dr. Joy H. Madison, MD (Exhibit 17F), the claimant can sit, stand, and walk for less than 2 hours. He would need to shift positions at will; and take unscheduled breaks during the day every few minutes. He would need to rest every half hour. He would need to elevate legs above heat for 70 - 80% during an 8 hour day. He could rarely lift carry less than 10 pounds; never twist; rarely stoop; never crouch; rarely climb stairs; and never climb ladders. He would be off task for 25% or more; is incapable of even low stress work; and would be absent more than four days per month. Dr. Madison's opinions are not persuasive. In terms of supportability, although Dr. Madison has examined and treated the claimant, the physical medical source statement lacks sufficient supporting evidence for the limitations opined by Dr. Madison. In terms of consistency with the overall record, the evidence indicates that the claimant's limitations are not as extreme as opined by Dr. Madison. For example, from April 2016 after his

>hospitalization to January 2018 the evidence indicates no occurrence of deep vein thrombosis, none or mild edema and some occurrences of 4 out of 10 pain level, which appeared to be manageable. He received treatment after the 2018 occurrence and improvement was noted during subsequent medical visits. In January 2019, claimant reported that his deep vein thrombosis was stable and intermittent swelling was noted (Exhibit 15F at 3). Moreover, while Dr. Madison opines that the claimant can rarely lift and carry less than 10 pounds, the medical evidence indicates that the claimant was given no lifting restrictions after he was discharged in January 2018 (Exhibit 18F at 7).
>
>I also noted that the claimant's friend, Kimberly Serocke, submitted July 2017 and April 2019 third-party function reports (Exhibits 5E; 17E). According to Ms. Serocke, the claimant has difficulty with exertional and postural activities; completing tasks. However, he is able to watch Ms. Seroke's daughter for a few hours; feeds his dog and walk him; carry out personal care independently; prepare simple meals; do laundry; shop in stores; manage finances (Exhibit 5E). Also according to Ms. Serocke, the claimant lived with chronic debilitating pain; the embolism limits his walking and stamina; needs to rest often; elevates his legs (Exhibit 17E). I note that while Ms. Serocke mentions leg elevation in her letter, she does not indicate a need for leg elevation in her third party function report. Nevertheless, this third party statement is taken under consideration, to the extent it is consistent with the medical evidence of record, as it is based on personal observation of the claimant.

*Id.* at 26.

Contrary to Statkiewicz's assertions, we find that the ALJ considered the supportability factor because he determined that Dr. Madison's opinion was largely based on Statkiewicz's self-reported limitations. *Id.* Further, the ALJ evaluated Dr. Madison's opinion against the entire record and found it unsupported by the medical evidence or clinical records. *Id.* As to the "probative evidence," Statkiewicz contends the ALJ should have considered the record reflects that such records are treatment records, not medical opinions as defined in the applicable regulations, and the ALJ was not required to evaluate their persuasiveness. S*ee* 20 CFR § 416.913(a)(2) (defining medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" the ability to perform work-related functions). Thus, we find that the ALJ properly analyzed

16

Statkiewicz's claim, and Dr. Madison's opinion in particular, and the ALJ's findings are supported by substantial evidence.

## V.     CONCLUSION

For the forgoing reasons, the Court will affirm the Commissioner's decision. An appropriate Order accompanies this Opinion.

Date:  March 16, 2022

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
**JULIEN XAVIER NEALS
UNITED STATES DISTRICT JUDGE**

17